UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONTE JACKSON-GIBSON
and TORIEL DIXON,

        Plaintiffs,

                                      Civil Case No. 20-12765

v.                                  Honorable Linda V. Parker

REGINALD BEASLEY, JUSTIN
HEARN, and DEREK FIELDS,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from the arrest of Plaintiffs Toriel Dixon and Lamonte Jackson-Gibson at around 2:00 a.m. on June 8, 2019, in Greektown.  In a two-count Complaint filed under 42 U.S.C. § 1983, Plaintiffs claim that Defendant Detroit Police Department Sergeant Reginald Beasley unlawfully arrested, detained, and used excessive force against them in violation of their Fourth and Fourteenth Amendment rights (Count I), and that Defendants Detroit Police Officers Justin Hearn and Derek Fields violated their Fourth and Fourteenth Amendment rights by failing to intervene to prevent Sergeant Beasley's unlawful actions (Count II).  The matter is presently before the Court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  (ECF

No. 33.)  The motion has been fully briefed.  (ECF Nos. 35, 38.)  Finding the facts and legal arguments adequately presented in the parties' filings, the Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.    Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *See Liberty Lobby*, 477 U.S. at 255.

" 'There is, however, an added wrinkle' where the record contains 'a videotape capturing the events in question.'"  *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).  As the Sixth Circuit summarized in *Shumate*:

> Because facts must be viewed in the light most favorable to the non-moving party only if there is a genuine dispute as to those facts, we may not adopt a version of the facts that is blatantly contradicted by video footage that is not doctored or altered in any way and which clearly depicts the events that actually happened.  But we must nonetheless view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff, and must also make all reasonable inferences in their favor when undertaking the qualified immunity analysis on summary judgment.

*Id.* at 438 (cleaned up).  Thus, if a reasonable juror could view the events depicted in a video only one way, that version of the facts must be accepted for purposes of resolving a summary judgment motion.  *See Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (citing *Harris*, 550 U.S. at 380).  On the other hand, if a reasonable jury could interpret the events shown in the video multiple ways or if the video does not show all relevant facts, such facts must be viewed in a light most

favorable to the non-moving party.  *Id*. (citing *Godawa v. Byrd*, 798 F.3d 457, 463

(6th Cir. 2015)).

## II.    Factual Background

On Saturday, June 8, 2019, Defendants were assigned to Greektown crowd

control, which included keeping pedestrian traffic moving as "loitering" increases

the likelihood of violence or confrontational incidents.  (*See, e.g.,* Fields Dep. at

19-20, ECF No. 33-6 at PageID 230-231; Beasley Dep. at 118-19, ECF No. 33-7 at

PageID 435-36.)  Defendants were in full uniform.  (*See* Project Greenlight Video;

Beasley Body-Worn Camera ("Body Cam") video.)  A little before 1:45 a.m. on

June 8, Plaintiffs (who are engaged) traveled with four other individuals to

Greektown to celebrate Mr. Jackson-Gibson's 25th birthday.  (Dixon Dep. at 11-

12, ECF No. 33-8 at PageID 501-02; Jackson-Gibson Dep. at 10-13, ECF No. 33-9

at PageID 568-71.)  The group had been drinking at home before going

downtown.[1]  (Dixon Dep. at 10-11, ECF No. 33-8 at PageID 500-01.)

---

[1] In their brief, Defendants assert that Mr. Jackson-Gibson was intoxicated (ECF
No. 33-4 at PageID 181); however, the evidence they cite does not support this
assertion (*see* Dixon Dep. at 9-10, ECF No. 33-8 at PageID 500-01; Jackson-
Gibson Dep. at 85-86, ECF No. 33-9 at PageID 643-44.)  The cited testimony
reflects only that Mr. Jackson-Gibson consumed alcohol before going downtown,
and that he had consumed no more than "a couple [of] drinks."  (Jackson-Gibson
Dep. at 85, ECF No. 33-9 at Pg ID 643.)  Further, Defendants do not assert that
any of the officers believed Mr. Jackson-Gibson was intoxicated, nor, more
importantly, do they point to evidence supporting such an assertion.

4

As Plaintiffs and their companions walked along Monroe Street, they stopped along the sidewalk to observe street musicians positioned just inside an adjoining parking lot. (*See* Project Greenlight Video.) Other individuals had stopped to listen, too. (*Id*.) Defendants walked past the group and, as they did so, Sergeant Beasley told the group to "keep that shit moving." (Jackson-Gibson Dep. at 13, ECF No. 33-9 at PageID 571.)

Mr. Jackson-Gibson, who found Sergeant Beasley's comment disrespectful and an inappropriate manner for law enforcement officers to speak to civilians, responded with a hand motion, as if to say "don't talk to us like that." (*Id*. at 15-16, PageID 573-74.) Sergeant Beasley, who had walked past Mr. Jackson-Gibson and his companions, turned back and approached Mr. Jackson-Gibson. (*Id*. at 17, PageID 575.) This interaction was captured on Sergeant Beasley's body camera; however, the audio did not record immediately. (*See* Beasley Body Cam Video at 0:00-0:15.) According to Mr. Jackson-Gibson, Sergeant Beasley asked if they heard what he said. (Jackson-Gibson Dep. at 17, ECF No. 33-9 at PageID 575.) During his deposition in this matter, Mr. Jackson-Gibson described Sergeant Beasley's tone and manner as "super aggressive." (*Id.* at 21, 27, PageID 579, 585.)

Mr. Jackson-Gibson indicated in response that he heard what Sergeant Beasley said but questioned why he was talking to them like that. (*Id*.) A verbal exchange between Mr. Jackson-Gibson and Sergeant Beasley followed for several

seconds, which was not recorded, but what was subsequently picked up on
Sergeant Beasley's body camera consists of the officers telling the group to back
up and keep it moving and Mr. Jackson-Gibson asking why they needed to move
as they were on public property.  (Beasley Body Cam Video at 0:29-0:51.)  Mr.
Jackson-Gibson's companions, as well as someone the parties have referred to as
the "vagrant," tried to discourage Mr. Jackson-Gibson from engaging and to walk
away but he, instead, continued to question Sergeant Beasley.

Sergeant Beasley then warned Mr. Jackson-Gibson that he had five seconds
to walk away.  (*Id.* at 0:52.)  As Sergeant Beasley began to count, Mr. Jackson-
Gibson asked, "Or what? Or what you going to do?"  (*Id*. at 0:52-0:54.)  Before
Sergeant Beasley reached "two," he used his left arm to grab Mr. Jackson-Gibson's
left wrist and pulled out his handcuffs with his right arm.  (0:55-0:59.)  Individuals
in the crowd can be heard saying "let him go," and one of Mr. Jackson-Gibson's
friends grabbed Mr. Jackson-Gibson's arm and pulled it from Sergeant Beasley's
reach, while drawing Mr. Jackson-Gibson away from the officer and towards the
parking lot.  (*Id.* at 0:59-1:05.)  Sergeant Beasley then drew his taser and pointed it
toward the group, while saying "step back," "let him go," and "walk over here."
(*Id*. at 1:03-1:10.)

Ms. Dixon then approached within a foot of Sergeant Beasley and told him
several times that Mr. Jackson-Gibson's father is a police officer, listed his badge

number, and said that Sergeant Beasley "doesn't want to do this" and "doesn't want to touch him." (*Id.* at 1:10-1:29.) Mr. Jackson-Gibson also called out his father's badge number several times. (*Id.*) Sergeant Gibson repeated his instruction to walk away. (*Id*. at 1:28.) In response, Mr. Jackson-Gibson and Ms. Dixon stepped away into the adjacent parking lot. (*Id*. at 1:30-1:31.)

At that point, Sergeant Beasley briefly stepped away from the crowd but then walked toward Mr. Jackson-Gibson who had placed his hands behind his head. (*Id*. at 1:30-1:40.) According to Mr. Jackson-Gibson, Sergeant Beasley had indicated he was taking him to jail and so he was complying. (Jackson-Gibson Dep. at 42, ECF No. 33-9 at PageID 600.) As Sergeant Beasley approached Mr. Jackson Gibson with his handcuffs in one hand, Ms. Dixon quickly approached saying "no, no, no." (Beasley Body Cam at 1:40-1:43.) Using one hand, Sergeant Beasley pushed Ms. Dixon away. (*Id*. at 1:43-1:44.) Ms. Dixon was neither propelled backward nor did she fall or lose her balance. (*Id*.) Sergeant Beasley testified that he pushed Ms. Dixon away because he thought she was trying to take the taser out of his hand and, with his hands up, the rest of his equipment, such as his gun, was exposed. (Beasley Dep. at 68, 143, ECF No. 33-7 at PageID 385, 460.)

When Sergeant Beasley pushed Ms. Dixon, Mr. Jackson-Gibson reacted, turning quickly around and yelling "don't push her." (Beasley Body Cam at 1:44-

1:45.)  Sergeant Beasley testified that Mr. Jackson-Gibson took "a fighter stance" with his fists clenched.  (Beasley Dep. at 102, ECF No. 33-7 at PageID 419.) Sergeant Beasley indicated, however, that Mr. Jackson-Gibson did not lunge at him and the only threat he perceived was Mr. Jackson-Gibson's stance.  (*Id.* at 103, PageID 420.)  Ms. Dixon, two of the group's companions, and the "vagrant" were standing nearby, and Sergeant Beasley drew his taser in his right hand and ordered that they "back up."  (Beasley Body Cam at 1:45-1:50.)  Ms. Dixon then wrapped her arms around Mr. Jackson-Gibson, and they backed further into the parking lot. (*Id*. at 1:50-1:51.)

Sergeant Beasley walked towards Ms. Dixon and Mr. Jackson-Gibson, with his taser still drawn and pointed towards them, as they held onto each other in a kind of embrace.  (*Id*. at 1:51-1:53.)  Officer Fields, who was standing nearby, also had his taser drawn and pointed toward the couple.  (*Id.* at 1:58.)  Officer Fields testified that he drew his taser to try to de-escalate the situation and make the crowd disperse.  (Fields Dep. at 34, ECF No. 33-6 at PageID 245.)  During his deposition in this matter, Officer Hearn identified himself in the video and indicated that he was standing by Officer Fields and Sergeant Beasley early in the encounter (Hearn Dep. at 134, ECF No. 33-13 at PageID 981; Beasley Body Cam at 1:45-1:48); however, he is not visible in the video right before and when Mr.

Jackson-Gibson was tased and it is unclear from the record where he was standing at that point.

Sergeant Beasley instructed Mr. Jackson-Gibson several times to "let her go." (Beasley Body Cam at 1:53-1:59.)  When Mr. Jackson-Gibson failed to do so and the pair stepped away from Sergeant Beasley, with Mr. Jackson-Gibson's back to the officer, Sergeant Beasley tased Mr. Jackson-Gibson with a single charge. (*Id*. at 1:59.)  Officer Fields testified that he did not know Sergeant Beasley was going to tase Mr. Jackson-Gibson and, before officers deploy their tasers, they warn the person by saying "taser, taser, taser." (Fields Dep. at 45, 61, ECF No. 33-6 at PageID 256, 272; *see also* Hearns Dep. at 173, ECF No. 33-13 at PageID 1020.)  Officer Fields did not hear such a warning, and he claims he did not see the red light from the taser on Mr. Jackson-Gibson's back as he was focused on the other people around them.  (Fields Dep. at 41, 61, ECF No. 33-6 at PageID 252, 272.)  Officer Hearn did not recall seeing Sergeant Beasley tase Mr. Jackson-Dixon, although he did see Mr. Jackson-Dixon subsequently fall to the ground. (Hearn Dep. at 153, ECF No. 33-13 at PageID 1000.)

After being tased, Mr. Jackson-Gibson fell to the ground screaming and Ms. Dixon also began to scream.  (Beasley Body Cam at 2:00-2:01.)  Ms. Dixon then stepped between Sergeant Beasley and Mr. Jackson-Gibson or toward Sergeant Beasley and Sergeant Beasley pushed her aside.  (*Id*. at 2:00-2:03.)  Ms. Dixon fell

to the ground.  (*Id.*)  She quickly stood and returned to Mr. Jackson-Gibson's side and held him.[2]  (*Id.* at 2:07.)

Mr. Jackson-Gibson and Ms. Dixon were subsequently placed under arrest and transported to the Detroit Detention Center.  They both were released later that day.  Mr. Jackson-Gibson was charged with obstructing and resisting a police officer and disturbing the peace (ECF No. 33-15 at PageID 1100), and Ms. Dixon was charged with obstructing and resisting a police officer (ECF No. 33-16 at PageID 1109.)  They were subsequently acquitted of the charges.

## III.   Applicable Law & Analysis

In their pending motion, Defendants seek summary judgment with respect to Plaintiffs' claim of excessive force against Sergeant Beasley and Plaintiffs' claim against Officers Fields and Hearn for failing to intervene to prevent Sergeant Beasley's alleged use of excessive force.[3]

---

[2] Defendants understand Plaintiffs to be asserting a third one-handed "nudge" of Ms. Dixon by Sergeant Beasley when she returned to Mr. Jackson-Gibson's side. (*See* ECF No. 33-4 at PageID 195.)  Plaintiffs do not discuss this third push in their brief.  (*See* ECF No. 35 at PageID 1330-31.)

[3] It is unclear to the Court whether Plaintiffs continue to assert claims based on their alleged unlawful detention and wrongful arrest.  Defendants do not seek summary judgment with respect to those claims, to the extent they remain pending.

A.      Section 1983 & Qualified Immunity

Section 1983 creates a private right of action against a state official who

deprives an individual of his or her constitutional rights under color of state law.

42 U.S.C. § 1983.  Civil liability does not attach simply because a court determines

that an official's actions were unconstitutional, however.  Qualified immunity

shields federal and state officials from civil damages "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"The qualified immunity analysis is a two-step inquiry: (1) whether a

constitutional right has been violated; and (2) whether that right was clearly

established . . .."  *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (citing

*Pearson*, 555 U.S. at 232).  However, a court need not address the steps in order

and may choose to address only one step if doing so "will best facilitate the fair

and efficient disposition of [the] case."  *Pearson*, 555 U.S. at 242.  The plaintiff

bears the burden of showing that a defendant is not entitled to qualified immunity.

*Chappell*, 585 F.3d at 907 (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th

Cir. 2006)).

Defendants argue that Sergeant Beasley did not violate Plaintiffs' Fourth

Amendment rights but, even if he did, there was no clearly established law

11

indicating that the use of force under the circumstances presented was
unconstitutional.  Absent a violation by Sergeant Beasley, Defendants argue that
Officers Fields and Hearns cannot be liable for failing to intervene.  Alternatively,
Defendants maintain that they did not know Sergeant Beasley would tase Mr.
Jackson-Gibson or have the opportunity or means to intervene.  The Court begins
with the question of whether a reasonable juror could find, based on the undisputed
record, that Sergeant Beasley violated Mr. Jackson-Gibson's or Ms. Dixon's right
to be free from the use of excessive force.

### B.   Excessive Force

Law enforcement officers run afoul of the Fourth Amendment's protection
against unreasonable seizures by using excessive force "in the course of an arrest,
investigatory stop, or other seizure." *Graham v. Connor*, 490 U.S. 386, 395
(1989).  Whether excessive forced was used is assessed under "an objective
reasonableness test, looking to the reasonableness of the force in light of the
totality of the circumstances confronting the defendants." *Brown v. Lewis*, 779
F.3d 401, 418 (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th
Cir. 2013)); *see also Graham*, 490 U.S. at 396.  The assessment is made "without
regard to [the officer's] underlying intent or motivation." *Graham*, 490 U.S. at
397.  It is "judged from the perspective of a reasonable officer on the scene, rather
than with the 20/20 vision of hindsight" and takes into account that police officers

12

"are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

"Three important but non-exhaustive factors guide [the excessive force] analysis: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006)). "Throughout the inquiry, [the court] must carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). Again, the three factors set forth above are non-exhaustive, "[t]he ultimate question . . . is 'whether the totality of the circumstances justifies a particular sort of seizure.'" *Id.* (quoting *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985))).

### 1.   Constitutional Analysis as to Mr. Jackson-Gibson

### a.   The severity of the crime

The officers first approached Mr. Jackson-Gibson and the other individuals congregating around the street musicians for loitering, which is a civil infraction. (Beasley Dep. at 78, ECF No. 33-7 at PageID 395.)  However, Defendants maintain that due to Mr. Jackson-Gibson's refusal to continue moving and "pull[ing] his arm away" when Sergeant Beasley attempted to arrest him (ECF No. 33-4 at PageID 196), his behavior escalated to the misdemeanor offense of Interference with a City Employee and the felony Resisting or Obstructing. Defendants also argue that "when considering Mr. Jackson-Gibson's escalation of the confrontation, the time of night, the size of the crowd with whom he was with, the number of pedestrians and innocent bystanders, and Mr. Jackson-Gibson's level of intoxication, the severity of the crime**s** at issue weigh in favor of S[ergeant] Beasley."  (*Id.* (emphasis in original).)

A reasonable jury could find, however, that Mr. Jackson-Gibson was doing nothing more than asking Sergeant Beasley what he and his friends were doing wrong by standing and listening to street musicians on a public sidewalk and, therefore, why they needed to move along, as the officers instructed.  Even if Mr. Jackson-Gibson was resisting a police officer's commands, "there was minimal (if any) connotation of violence by [Mr. Jackson-Gibson] in th[e] encounter."

14

*Shumate v. City of Adrian*, 44 F.4th 427, 441 (6th Cir. 2022) (citing *LaPlante v. City of Battle Creek*, 30 F.4th 572, 580 (6th Cir. 2002)).  And even if Mr. Jackson-Gibson used profanity and was rude, this does not render his crime severe.  *Id*. ("Even if an 'exchange containing the use of profanity' amounts to resisting arrest under a state statute, such crime is not particularly severe.") (citation, brackets, and ellipsis omitted).  Further, while Mr. Jackson-Gibson's friends may have pulled him from Sergeant Beasley's grasp, there is no evidence that Mr. Jackson-Gibson voluntarily resisted Sergeant Beasley's attempt to arrest him.

A reasonable jury also could find that Sergeant Beasley, rather than Mr. Jackson-Gibson, escalated the confrontation and actually set the tone of the interaction by using profanity to instruct the crowd watching the street musicians to keep moving.  The Court already addressed Defendants' unsupported assertion regarding Mr. Jackson-Gibson's level of intoxication.  *See supra* n. 1.  A jury also could find that there was not a large crowd when the officers first approached Mr. Jackson-Gibson and that it was the officers' behavior, not Mr. Jackson-Gibson's, that caused a crowd to develop.

For these reasons, this first factor weighs in Mr. Jackson-Gibson's favor.

**b.    The immediacy of the threat**

Defendants acknowledge that "Mr. Jackson-Gibson's only *offensively* aggressive act was taking a 'fighting stance' after S[ergeant] Beasley pushed Ms.

15

Dixon away" but point to the same considerations discussed above to argue that this factor also weighs in their favor. (ECF No. 33-4 at PageID 196-97 (emphasis in original).) The Court has addressed those considerations above. A jury could conclude that a reasonable officer on the scene would not credibly have felt threatened by Mr. Jackson-Gibson, including when he allegedly took a "fighting stance." Mr. Jackson-Gibson did not lunge or even step toward Sergeant Beasley or any other officer when he stood with his hands clenched. As Defendants acknowledge, nothing else that Mr. Jackson-Gibson did "evidence[d] any manifest intention to engage physically with [Sergeant Beasley or any other officer]—or even aggressively to approach him." *Shumate*, 44 F.4th at 443 (quotation marks and citation omitted).

As the Sixth Circuit reiterated in *Shumate*, "[a]n officer's use of a Taser is permissible where a suspect poses an immediate threat in the form of 'violent thrashing,' an 'attempt to hit officers, or by making a display of force.'" *Id*. at 444 (quoting *Kent*, 810 F.3d at 391) (brackets omitted). As the court found with respect to the plaintiff in *Shumate*, Mr. Jackson-Gibson's "behavior before he was tased does not fall into that camp. The video betrays no intent of [Mr. Jackson-Gibson] to injure [Sergeant Beasley or any other officer]." *Id*. Like the plaintiff in *Shumate*, Mr. Jackson-Gibson "may have been minimally threatening insofar as his behavior [may have been] rude, annoying, untoward, and uncooperative.

16

However, mere 'agitated hand gestures' and profanity, unaccompanied by threats, fall short of the prototypical behavior that would make an officer fear for his physical safety." *Id*. "Such a conclusion is particularly apt in this case," as it was in *Shumate*, "where the officer likewise displayed a penchant for profanity." *Id*.

The Sixth Circuit's conclusion of this second factor in *Shumate* is an apt ending here:

> "Not every push or shove by a police officer, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865). In this case, the converse rings true: Not every profane uttering or rude gesture by a free citizen, even if it may seem unnecessary to a police officer, justifies using force on an otherwise non-threatening individual. Under these circumstances, [Mr. Jackson-Gibson] posed a minimal safety threat, and the second *Graham* factor weighs against the use of force deployed since the force used did not match the threat [Mr. Jackson-Gibson] presented.

44 F.4th at 446.

### c.   Resistance to arrest or evasion of flight

"When a suspect actively resists arrest, the police can use a Taser . . . to subdue him; but when a suspect does not resist or has stopped resisting, they cannot." *Id*. (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015)) (brackets omitted). The Sixth Circuit characterizes "active resistance . . . as 'noncompliance' that is coupled with 'some outward manifestation—either verbal or physical—on the part of the suspect that suggests volitional and conscious

17

defiance.'"  *Kent*, 810 F.3d at 392 (quoting *Eldridge v. City of Warren*, 533 F.

App'x 529, 534 (6th Cir. 2013)).  "Active resistance includes 'physically

struggling with, threatening, or disobeying officers.'"  *Id*. (quoting *Rudlaff*, 791

F.3d at 641) (additional quotation marks and citation omitted).  "And it includes

refusing to move your hands for the police to handcuff you, at least if that inaction

is coupled with other acts of defiance."  *Rudlaff*, 791 F.3d at 641 (citations

omitted).  However, "noncompliance alone does not indicate active resistance."

*Shumate*, 44 F.4th at 446 (quoting *Eldridge*, 533 F. App'x at 535).

A reasonable jury could conclude that Mr. Jackson-Gibson was not engaged

in active resistance or evasion of flight when he was tased by Sergeant Beasley.  It

was Mr. Jackson-Gibson's *companions* who tried to pull him away from the

officers and prevent Officer Beasley from handcuffing him.  Mr. Jackson-Gibson,

in comparison, stepped into the parking lot and put his arms behind his head to be

handcuffed when Sergeant Beasley indicated he was being taken to jail.

It was Ms. Dixon who first embraced Mr. Jackson-Gibson when Sergeant

Beasley pointed the taser and again attempted to handcuff him.  While Mr.

Jackson-Gibson then wrapped his arms around Ms. Dixon and did not immediately

respond to Sergeant Beasley's instructions to let go, a reasonable juror could

conclude that Mr. Jackson-Gibson's actions were not designed to prevent the

officers from seizing him.  Ms. Dixon and Mr. Jackson-Gibson's embrace is not

equivalent to "subjects interlock[ing] their arms in an act of civil disobedience." (*See* ECF No. 33-4 at PageID 199 (quoting ECF No. 33-19 at PageID 1127).)  In other words, a jury could find that their embrace was not a sign of physical defiance to the officer's control.

This factor also weighs in favor of Mr. Jackson-Gibson.

### d.    Summary

Weighing the above factors, while viewing the record in the light most favorable to Plaintiffs to the extent not contradicted by the video evidence, leads the Court to conclude that Sergeant Beasley's tasing of Mr. Jackson-Gibson was not objectively reasonable under the circumstances presented.  Defendants argue that "Mr. Jackson-Gibson's conduct falls within the boundaries of 'active resistance.'"  (ECF No. 33-4 at PageID 203.)  Even if true, the factors are considerations not requirements and they are not exhaustive.  In other words, even if there is some uncertainty as to whether Mr. Jackson-Gibson's conduct constituted "active resistance," that factor alone is not determinative.  "The ultimate question . . . is 'whether the totality of the circumstances justifie[d] a particular sort of seizure.'"  *Kent*, 810 F.3d at 390 (quoting *Graham*, 490 U.S. at 396).  A reasonable jury could find that the circumstances did not justify Sergeant Beasley's tasing of Mr. Jackson-Gibson.

## 2.   Clearly Established Analysis as to Mr. Jackson-Gibson

As stated earlier, the Fourth Amendment guarantees individuals the right to be free from excessive force.  "While this general right is well known, the right at issue is not defined at such 'a high level of generality.'"  *Palma v. Johns*, 27 F.4th 419, 442 (6th Cir. 2022) (quoting *Godawa*, 798 F.3d at 467).  "Rather, 'the clearly established law must be 'particularized.'"  *Id*. (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).  The question is "whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted."  *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017)) (additional quotation marks and citation omitted).  "Plaintiff[s] need not show that 'the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness of the official action must be apparent.'"  *Shumate*, 44 F.4th at 449-50 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (ellipsis and brackets removed).

The right to be free from physical force when one is not actively resisting the police was clearly established by June 8, 2019, the date of the incident at issue here.  *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) (citing *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)); *see also Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) ("Cases in this [C]ircuit clearly establish the right of people who pose no safety risk to the police to be free from

20

gratuitous violence during arrest.").  "It was also clearly established in this Circuit that an individual has a constitutional right not to be tased when he is not actively resisting."  *Shumate*, 44 F.4th at 450 (citing *Browning v. Edmonson Cnty.*, 18 F.4th 516, 525 (6th Cir. 2021)).  As discussed above, viewing the record in a light most favorable to Plaintiffs, there was no indication that Mr. Jackson-Gibson committed a severe crime, posed an immediate threat to any of the officers, or attempted to resist arrest or flee.

For these reasons, Sergeant Beasley is not entitled to summary judgment with respect to Mr. Jackson-Gibson's claim of excessive force.

### 3.    Constitutional Analysis as to Ms. Dixon

Ms. Dixon was actively interfering with Sergeant Beasley's arrest of Mr. Jackson-Gibson.  Significantly, each time before Sergeant Beasley pushed Ms. Dixon, she had approached very closely to him.  Sergeant Beasley testified that Ms. Dixon had "approach[ed his] immediate space" and his gear was exposed to her.  (Beasley Dep. at 143, ECF No. 33-7 at PageID 460.)

A third party has no right to obstruct another's arrest, even if that arrest is unlawful.  *Darrah v. City of Oak Park*, 225 F.3d 301, 313 (6th Cir. 2001).  Moreover, as stated above, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004) (quoting *Graham*, 490 U.S. at

396-97) (holding that officer's push of suspect's mother on stairwell, which caused her to momentarily lose her balance and stumble down one step of stairs, was not unreasonable, when she placed herself "in the middle of a chaotic, tense, and rapidly evolving situation").  "There is . . . a *de minimis* level of force with which the Constitution is not concerned." *Hanson v. Madison Cnty. Detention Ctr.*, 736 F. App'x 521, 530 (6th Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)).  Ms. Dixon was not injured in the encounter and while "the extent of the injury inflicted is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment," *Williams v. Maurer*, 9 F.4th 416, 439 (6th Cir. 2021) (cleaned up), a reasonable jury could not find that Sergeant Beasley inflicted "gratuitous violence" on Ms. Dixon," which is what the court "look[s] to" *id.* (citations omitted).

The Court, therefore, is granting summary judgment to Sergeant Beasley with respect to Ms. Dixon's excessive force claim.

### C.    Failure to Intervene by Officers Fields and Hearn

To hold Officers Fields and Hearn liable for their failure to intervene in Sergeant Beasley's alleged excessive force against Mr. Jackson-Gibson, Plaintiffs must show that (1) Officer Fields or Officer Hearn "observed or had reason to know that excessive force would be or was being used; and (2) [they] had both the opportunity and the means to prevent the harm from occurring." *Goodwin*, 781

22

F.3d at 328 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Plaintiffs' claim against Officer Fields and Hearn does not meet this standard.

There is no evidence in the record from which a reasonable juror could conclude

that these officers were on notice that Sergeant Beasley was going to tase Mr.

Jackson-Gibson.  Further, there is no indication that they had the opportunity to

"both perceive what was going on and intercede to stop it."  *Burgess v. Fischer*,

735 F.3d 462, 475 (6th Cir. 2013).

Plaintiffs establish that Officers Fields and Hearn saw Sergeant Beasley with

his taser drawn and pointed at Mr. Jackson-Gibson.  However, Plaintiffs do not

refute the officers' testimony that they are trained to specifically verbalize their

intent to deploy a taser before doing so, and that Sergeant Beasley did not do so

before tasing Mr. Jackson-Gibson.  Plaintiffs also do not refute the officers'

testimony that the drawing of a taser is considered a form of de-escalation.  For

these reasons, Officers Fields and Hearn had no warning that Sergeant Beasley

would tase Mr. Jackson-Gibson.  *See Mack v. Bessner*, 512 F. Supp. 3d 784, 794

(E.D. Mich. 2021) (granting summary judgment to officers on the plaintiff's

failure-to-intervene claim where no warning was given before another officer

suddenly tased the plaintiff).  Moreover, the Sixth Circuit has found a duty to

intervene "only where the 'underlying episode of excessive force spanned a

sufficient period of time for a nearby defendant to both perceive what was

happening and intercede to stop it.'"  *Kowolonek v. Moore*, 463 F. App'x 531, 539

(2012) (quoting *Ontha v. Rutherford Cnty*, 222 F. App'x 498, 506 (6th Cir. 2007))

(ellipsis omitted).  Sergeant Beasley's single tasing of Mr. Jackson-Gibson was too

brief to afford the other officers an opportunity to intervene.  *Id.* (holding that

officers were entitled to summary judgment with respect to the plaintiff's claim

that they failed to intervene when another officer used a taser against him, even

where officer gave a warning before applying the taser); *see also Barton v. City of*

*Lincoln Park*, 726 F. App'x 361, 366 (6th Cir. 2018) ("[T]his Court has previously

found that a duty to intervene did not arise where an officer gave a warning before

applying a taser but other officers present did not have opportunity or means to

prevent it"); *Ontha*, 222 F. App'x at 501, 506-07 (finding no failure to intervene

where instance of excessive force lasted six or seven seconds).

For these reasons, Officers Fields and Hearns are entitled to summary

judgment in their favor.

## IV.    Conclusion

In summary, the Court concludes that a reasonable jury could find that

Sergeant Beasley used excessive force against Mr. Jackson-Gibson.  A reasonable

jury could not reach the same conclusion with respect to the force Sergeant

Beasley used against Ms. Dixon.  Finally, Officers Fields and Hearns are not liable

for the excessive force used against Mr. Jackson-Gibson under a failure-to-intervene theory.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 33) is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is denied as to Mr. Jackson-Gibson's excessive force claim against Sergeant Beasley but is granted as to Ms. Dixon's excessive force claim against all Defendants and as to Plaintiffs' failure-to-intervene claim against Defendants Fields and Hearn.[4]

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 27, 2023

---

[4] If Plaintiffs are alleging the violation of their constitutional rights based only on the alleged use of excessive force, Officers Fields and Hearn will be dismissed as parties to this action.  The parties should confer and inform the Court as to whether any claims remain against these two individuals or whether they should be dismissed as parties to this action with prejudice.